UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| D.S., a minor claimant, ) | Civil Action No.: 0:18-cv-03603-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Andrew M. Saul, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, D.S., a minor child, seeks judicial review pursuant to the 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for social security income ("SSI"). His claim was protectively filed on his behalf, by his mother, Leah Stokes, on October 24, 2014. The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF No. 23]. Plaintiff filed objections to the R&R, and the Commissioner filed a reply. [ECF No. 27; ECF No. 28]. This Court now issues the following Order.

**Factual Findings and Procedural History**

The case involves the issue of whether a claimant is disabled under the Social Security Act. An individual under the age of 18 will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(C)(I); see 20 C.F.R. § 416.906. Here, Ms. Leah Stokes

filed an application on behalf of her minor child, D.S., for supplemental social security income on October 24, 2014. D.S. is now 16 years old but was 10 years old on the date the application was filed. D.S. alleges disability due to attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, and autism spectrum disorder. According to the medical evidence of record, D.S. has been diagnosed as having ADHD, as well as anxiety. [ECF No. 9-2, p. 34]. D.S. was also assessed with autism spectrum disorder in June of 2016 at the Medical University of South Carolina. [ECF No. 9-2, p. 34], but the school district determined he did not qualify for its autism services. At the hearing, his mother testified about her concerns regarding claimant's social functioning, ability to maintain attention, and his behavior. His school records reveal that he is eligible for special education services as a child with "other health impairment." As noted by the ALJ, D.S. generally does satisfactory in school.

After the application was denied initially and on reconsideration, Plaintiff requested a hearing, which was held on April 20, 2017. Present at the hearing were D.S., his mother, and Richard C. Alexander, an attorney representing D.S. Thereafter, the ALJ issued her decision on September 20, 2017, finding that D.S. is not disabled under the Social Security Act. Specifically, the ALJ found:

> (1) Claimant was born on July 28, 2004. Therefore, he was a school-age child on October 24, 2014, the date the application was filed, and is currently an adolescent (20 CFR 416.926(a)(g)(2)).
>
> (2) Claimant has not engaged in substantial gainful activity since October 24, 2014, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).
>
> (3) Claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), anxiety disorder, and autism spectrum disorder (20 CFR 416.924(c)).
>
> (4) Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20

2

>   CFR 416.924, 416.925 and 416.926).
>
>   (5) Claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a).
>
>   (6) Claimant has not been disabled, as defined in the Social Security Act, since October 24, 2014, the date the application was filed (20 CFR 416.924(a)).

[ECF. No. 9-2, pp. 32-46].

Plaintiff requested a review of this decision. The Appeals Council denied his request for review on October 31, 2018. This action was commenced on December 28, 2018. [ECF No. 1]. Both Plaintiff. and the Commissioner filed briefs [ECF No. 13; ECF No. 16; ECF No. 20], and the Magistrate Judge issued a Report and Recommendation ("R&R") on January 16, 2020, recommending that the Commissioner's decision be affirmed. [ECF No. 23]. Plaintiff filed objections on February 14, 2020. [ECF No. 27]. The Commissioner replied to these objections on February 27, 2020. [ECF No. 28].

## Standard of Review

**I.     Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58

(4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157.

## II.     The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for

clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

A child is considered disabled under the Social Security Act if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" which are expected to either cause death or last continuously for at least twelve months. 42 U.S.C. § 1382(c)(3)(C)(I); see also 20 C.F.R. § 416.906. The Regulations set forth a sequential three step process for analyzing disability applications for children. 20 C.F.R. § 416.924. Those steps are as follows: (1) is the child engaged in "any substantial gainful activity?" If so, benefits should be denied. (2) Does the child have an impairment or combination of impairments that are severe? If the child does not have a severe impairment, benefits should be denied. (3) Does the child's impairment or impairments meet, medically equal or are functionally equivalent to the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1? If the minor claimant has such an impairment, then SSI benefits should be granted.

In determining whether an impairment or combination of impairments functionally equals the listings, the Commissioner must assess a claimant's functioning in six different "domains" to determine what a child can and cannot do. 20 C.F.R. §§ 416.924a; 416.926(a)(b)(1). These domains include: (1) the ability to acquire and use information; (2) attend and complete tasks; (3) interact and relate to others; (4) move about and manipulate objects; (5) care for oneself; and (6) their health and physical well-being. 20 C.F.R. §§ 416.924(a), 416.924(b), 416.926a(b)(1). For a child's impairment(s) to functionally equal the listings, they must result in either "marked" limitations in two domains, or an "extreme"

limitation in one domain. 20 C.F.R. § 416.926a(a). In assessing whether a claimant has a "marked" or "extreme" limitation, one must consider the functional limitations from all medically determinable impairments, including those impairments that are not severe. 20 C.F.R. § 416.926a(a). Further, the Regulations provide that one must consider the interactive and cumulative effects of a claimant's impairment(s) in any affected domain. 20 C.F.R. § 416.926a(c).

A child has a "marked" limitation when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). Further, the Regulations state that a "marked" limitation is "more than moderate" but "less than extreme." A child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

### Analysis

Plaintiff's objection is that substantial evidence does not support the ALJ's findings in determining the level of impairment the minor claimant experienced with respect to at least two of the domains, that is, his ability to acquire and use information, and his ability to attend and complete tasks. First, he argues that ALJ failed to properly analyze his application because she "ignored" the fact that he repeated an academic grade, thereby creating harmful error in the analysis regarding the disability determination. Plaintiff argues that the ALJ improperly evaluated his ability to acquire and use information because the ALJ did not consider the fact that the year prior to the application being filed, D.S. repeated the third grade. Plaintiff further points to numerous tests results within his record to argue that he clearly has "marked" or "more than marked" deficits in this domain. Second, he argues that the ALJ incorrectly assessed his ability to attend and complete tasks. The overarching argument therefore is that had the ALJ factored in him having to repeat the third grade, the ALJ would have then had to find

marked limitations in both of these domains. The Commissioner responds that the ALJ acknowledged D.S.'s previous challenges and his academic strength and weaknesses, as well as his scholastic record. Commissioner argues that the ALJ's statement that D.S. had not repeated a grade since 2014 does not mean that the ALJ did not consider evidence outside the relevant period, nor does it negate the fact that substantial evidence supports the decision.

When considering a child's ability to "acquire and use information," for this domain, the Commissioner considers how well the child acquires or learns information, and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g). In considering this domain, the claimant's ability to use concepts and symbols acquired through play and learning to read, write, do arithmetic and understand and use information is assessed. 20 C.F.R. § 416.926a(g)(1)(i). The Regulations consider "thinking" as the application or use of learned information, including the ability to perceive relationships, reason, and make logical choices. 20 C.F.R. § 416.926a(g)(1)(ii). Some examples of limited functioning in this domain provided for in the Regulations include the inability to recall important things learned in school or difficulty solving math problems.

In assessing the "attending and completing tasks" domain, the Commissioner considers how well a child is able to focus and maintain attention, along with how well he begins, carries out, and finishes activities, including the pace he performs activities and the ease he changes activities. 20 C.F.R. § 416.926a(h). The Regulations state that attention involves regulating levels of alertness and maintaining concentration. 20 C.F.R. § 416.926a(h)(1)(i). The Regulations further state adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. 20 C.F.R. § 416.926a(h)(1)(ii). Here, examples of limited functioning might include being easily startled or distracted, slow to focus or a failure to complete activities, or repeatedly becoming sidetracked. 20

C.F.R. § 416.926a(h)(3).

Plaintiff argues that the ALJ cherry-picked the evidence and did not consider the fact that prior to this application being filed, D.S. repeated the third grade. Plaintiff further points to certain evaluations, including a speech therapy evaluation, as well as reports by two teachers, Ms. Zeigler and Ms. Felice, to argue that D.S. should have been found to have greater limitations in the domain of acquiring and using information. Here, the ALJ found that D.S. had less than a marked limitation in acquiring and using information. The ALJ considered the fact that D.S. receives special education services but otherwise did not qualify for special education services due to an intellectual or learning disorder. The ALJ also appeared to consider D.S.'s test scores, as well as other measurement scales and grades to determine that D.S. was not disabled. The ALJ also reviewed the mother's testimony and the comments from Ms. Zeigler and Ms. Felice, whom D.S. argues provided evidence that D.S. should have been found to have greater limitations. The ALJ considered their questionnaires, as well as the other evidence of record but ultimately concluded that D.S., while not without some limitation, experienced less than a marked limitation in this domain.

Plaintiff's central argument as to why the ALJ should have found greater limitations in this domain, as well as in the attending and completing tasks domain, is that D.S. was so limited in his academic advancement that he had to repeat a school grade in a year prior to the time period at issue. The ALJ noted that during the time period at issue, D.S. did not repeat a grade. However, in reviewing the questionnaires from his teachers in the record, it appears that D.S.'s verbal skills were not commensurate with his grade level.

For example, Ms. Zeigler, his special education teacher, completed a form in November of 2014 noting that D.S. was on a second grade reading level and a second grade written language level. [ECF

No. 9-7, Ex. 4E]. At the time she filled out this survey, D.S. would have been ten years old. She rated him as having a "very serious" problem with the written form and struggled to complete a writing assignment on his own. In April of 2017, several years later, Ms. Felice, another special education teacher, filled out a questionnaire, as well. She indicated that he was on a third grade reading level, and a second/third grade written language level. [ECF No. 9-8, Ex. 18E]. At the time of this questionnaire, D.S. was approaching thirteen years old. In the section assessing the domain of "acquiring and using information," she indicated he had a "very serious" problem with reading and comprehending written material, as well as providing organized oral explanations and adequate descriptions and expressing ideas in written form. She further indicated that he had an extremely difficult time writing in a legible format and was therefore allowed to type his responses. Similarly, in assessing the domain of "attending and completing tasks," this teacher indicated he had a very serious problem paying attention to people, carrying out multi-step instructions, organizing materials, completing assignments accurately, and working at a reasonable pace and without distracting others. [ECF No. 9-8, Ex. 18E].

In considering these assessments, this Court notes that these questionnaires were filled out several years apart and from two different individuals, yet they contain consistent findings. This Court is also cognizant of the fact that D.S. was assessed with autism spectrum disorder by MUSC in 2014. The fact that D.S. had to repeat a grade just prior to this time period would seem to be relevant, at least as to assessing the domain of acquiring and using information. Further, this Court notes that only some weight was given to Ms. Zeigler and Ms. Felice's academic statements, despite the fact that they appear to be consistent and were years apart. Specifically, the ALJ gave only "some weight" to the questionnaire from Ms. Zeigler, noting that it was completed in November of 2014 and was "rather remote" in terms of the date of this decision. However, the ALJ also only gave "some weight" to Ms.

Felice's questionnaire, which contained similar findings as those by Ms. Zeigler and was filled out approximately five months before the date of the ALJ's decision. The reason given for providing only "some weight" to Ms. Felice's questionnaire was that, while she noted D.S. had "serious" to "very serious" problems with the domain of "acquiring and using information," she otherwise generally indicated that he did not have more obvious problems in most of the activities pertaining to the domains. However, given the fact that the ALJ previously found D.S. to have a marked limitation in at least one domain (the ability to care for himself), it is particularly important to the determination of disability whether he has a marked or extreme limitation in at least one other domain, as that would alter the disability analysis.

In reviewing the record as a whole, this Court cannot adequately ascertain whether the ALJ gave appropriate consideration to the questionnaires and statements of D.S.'s teachers, particularly given the fact that they appear consistent with each other and consistent with the fact that he had to repeat a grade just prior to the time period at issue. The ALJ did not acknowledge the consistency of these opinions, or otherwise explain how the rest of the evidence of record would support a finding that D.S. had less than a marked limitation in the two domains in question, thereby frustrating meaningful review of whether the decision is supported by substantial evidence. Accordingly, this Court finds it appropriate to remand D.S.'s claim back to the ALJ to appropriately consider the statements of D.S.'s teachers and educational records, particularly as it relates to the domain of acquiring and using information.

## **Conclusion**

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, the objections, and the applicable law. For the above reasons, the Court respectfully rejects the Magistrate Judge's recommendation. [ECF No. 23].

The Court **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDS** the case to the Commissioner to reconsider the evidence of record consistent with the findings in this Order.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
August 27, 2020  R. Bryan Harwell
  Chief United States District Judge